### JOHN TOWNSEND *vs.* JACOB GRIFFIN.

A divorce restoring to the wife her lands, &c., divests judgment liens created by the husband; and annuls sales made under such liens.

*Quere.* As to the constitutionality of special divorce laws, since the act of 1832, giving that jurisdiction to the court.

VERDICT for plaintiff, subject, &c. This was an action for use and occupation of certain lands belonging to Mary Ann Humphries, lately the wife of Peter A. Humphries, in her maiden right. On the 12th of February, 1839, the legislature of this State passed a special act, divorcing from the bonds of matrimony, Peter A. Humphries and Mary Ann his wife, and restoring to her all her lands, &c. Soon after this act was passed, Mrs. Humphries leased the premises to Griffin, and the rent claimed was for subsequent occupation.

Townsend claimed as a purchaser of the land on judgment and execution against Peter A. Humphries, prior to the act of divorce; and the question was, whether the rents belonged to Mrs. H. or to Townsend, the purchaser.

*Mr. Wales*, for Mrs. Humphries, argued, that on the divorce, Mrs. H. was restored to all her rights in the land, the same as if her husband had died; she being no party to the judgment on which the land was sold, it could bind her land only to the extent of her husband's interest, and only during the continuance of that interest. That the rights of a creditor of Peter A. Humphries, could not extend beyond his right to the property. Whether it was terminated

by death or divorce was the same. His rights in this land all arose from the marriage relation, and he could not encumber it beyond the continuance of that relation. The law protects the wife's interest except so far as she binds it by her own act. (1 *Shep. Touch.* 286.) Personal property of the wife not reduced to possession becomes the wife's on divorce. (5 *Pick. Rep.* 428, 461; 17 *Mass. Rep.* 59; 16 *Ibid* 486; 2 *Rop. Hus. & W.* 138.) And the act of divorce in terms restores to her all her property, as fully and entirely as before the marriage.

*Rogers*, contra.—P. A. H. was the husband of M. A. H., and was entitled to a life estate in her lands, as tenant by the curtesy initiate. He became indebted, and his creditors sold this land, on liens obtained before the divorce. Townsend bought it. The question then is, whether the legislature can defeat the interest of the creditor by a subsequent act of divorce.

This act was passed on the mere motion of the legislature, without any proof of default of the husband; and this is precisely the case put by the learned judge in the Dartmouth College case, as a clearly void usurpation of legislative power. (See also, 4 *Miss. Rep.* 120.).

But this case need not got so far as to deny the right of the legislature to pass an act of divorce; but only that they can, by such an act, divest the rights of creditors.

*Mr. Wales* replied, that there was no evidence of the grounds for passing the act of divorce, and the court could not inquire into the reasons on which the legislature acted.

As to the power of the legislature to pass divorce laws, and by them to restore to the wife all her lands discharged of liens created by the husband, he cited, 2 *Kent Com.* 127; *Reeves Dom. Rel.* 205, 208, 209; and the unquestioned usage of the State.

Having no ecclesiastical courts, this power is necessarily exercised by the legislature.

The *Court* held the matter under advisement; and, at a subsequent term, set aside the verdict, and entered judgment for the defendant. They had been much embarrassed by the difficulty and the great importance, in its general bearings, of one of the questions raised in argument; but they could not feel at liberty, on mere doubts, and in a case which in itself had not required or received the full investigation at bar that was demanded by the general question, to declare void a long system of legislation in granting divorces. They did not doubt, as to the effect of this act of divorce, that if sustained it would put an end to any marital rights of the husband

not already become absolutely his, including his right to the wife's lands as tenant by the curtesy initiate; and to put an end equally to any rights derived through him by a creditor in respect to such marital right.

They said that the marriage contract is one of a peculiar character, and subject to peculiar principles. It may be entered into by persons who are not capable of forming any other lawful contract; it can be violated and annulled by law, which no other contract can; it cannot be determined by the will of the parties, as any other contract may be; and its rights and obligations are derived rather from the law relating to it, than from the contract itself. Hence, it is in the power of the legislature, watching over this highest domestic relation and most important civil institution, to modify and change its rights and legal obligations; unless perhaps, in cases where property has been reduced into possession and used, or rights so exercised as to be incapable of restoration and return.

The right of curtesy is a right appertaining to a *husband,* or one who was such at the wife's death. This right does not become perfect until issue born, and the death of the wife; and can never be perfected if the relation of husband and wife be destroyed before the wife's death. With the destruction of that relation all its rights and obligations cease, of course, and the right of the husband's creditor cannot exceed his right. The lien of the judgment in this case, upon the husband's interest as tenant by the curtesy initiate in the wife's lands, was a right of the creditor vested no further than as subject to all the legal incidents of the relation of husband and wife; uncertain in its character, and liable to be defeated in any way in which the relation can be destroyed before the husband's tenancy became absolute.

As to the constitutional question, the court would not give any judgment upon it. It had not been argued. The investigation that had followed the mere suggestion of the question had raised doubts in the mind of the court, but would not justify a decision at this time against the legislative power.

Judge Harrington supposed the argument against the power to be based on the following principles:

1st. That the contract of marriage is recognized by law only as a *civil* contract; and its rights and duties are as much under the protection of the constitution, which prohibits the passing of any law impairing the obligation of contracts, as any other matter of mere civil obligation.

2d. That if this contract be capable of destruction by any power under the constitution, the jurisdiction belongs rather to the judicial than the legislative department, or to the conjoint action of both; the legislature declaring by a general law what shall be a good cause of divorce in all cases; and the judiciary ascertaining in the usual forms, whether these grounds exist in the particular case.

As to the first proposition, he remarked, marriage is, in a certain sense a contract; but more properly a compact, or relation. It has certain legal obligations and consequences while existing, and after it is determined ; yet it is a contract *sui generis;* unlike any other con-. tract which may be supposed to have been in the view of those who framed this constitutional prohibition. It may be called a contract of imperfect obligation. Many, indeed, most of its duties are beyond the reach of courts and juries, and may be said to be without sanction, unless a power exists somewhere to annul the relation, when its duties are utterly disregarded by one of the parties. The *legal* obligations of marriage are among the slightest obligations resulting from the relation; they are rather the collateral and incidental consequences than the original and prominent objects of this compact. They have reference to the property and sordid interests which attach to the connection ; while its more elevated purposes, the happiness of the parties and their offspring, resulting from a due observance of its moral obligations, are entirely unprotected by civil sanctions, and beyond the reach of compensation by actions at law. The marriage gives the husband a right to the wife's property, with certain restrictions. This is a legal right and can be enforced. It gives the wife a right to the husband's exclusive affection and regard ; but what legal remedy has she if he violates this, which is the primary object, and an infinitely higher obligation, of the compact? How can she be compensated if he violates the obligation to "forsake all others and cleave only unto her?" Shall the law afford him a remedy for her property by holding sacred and inviolate the contract in its details; while he disregards and despises the same contract, and utterly annuls it, in its original and real object and design? The argument which denies to the legislature the power to pass laws for dissolving the marriage contract is brought to this result; it places the property above the person; and makes pecuniary interests more sacred than the welfare and moral happiness of the parties, in regarding the obligatious of this contract. Such could not have been the kind of contracts referred to in this prohibitory clause of the constitution. They must have had reference to civil contracts of a pecu-

niary character, or such as are capable of enforcement by civil remedies; such as have mutual obligation, at least to some extent; for without this, such a contract would be without consideration, and invalid in itself on general principles of justice. Cotemporaneous expositions of the constitution gave a restrictive sense to this provision. It was not before, nor has it since been held, that marriage was a contract that might not be annulled by the supreme power upon any principles having reference to its obligations as a: contract; though the power, has in some States, been denied: to the legislature, acting upon special cases and not prescribing general rules. In the celebrated case of the Dartmouth College *vs.* Woodward, Chief Justice Marshall observed, that "the provision of the constitution has never been understood to embrace other contracts than those which respect property or some object of value, and confer rights which may be asserted in a court of justice. It has never been understood to restrict the general rights of the legislature to legislate on the subject of divorces." (*Dartmouth College* vs. *Woodward,* 4 *Wheat.* 518.)

2d. If the marriage contract is not of such a nature as to render it inviolable, what is the power in the State to annul it? Does it belong to the legislature, or to the judiciary, or to both? Acting separately or acting together? A leading feature of the constitutions of all the States, is the division of powers into three general branches; and the keeping of these powers separate as far as practicable. Some of the States require in terms an absolute separation ; others a qualified or reasonable separation; and others again, as our own, make no declaration on the subject, leaving it to be settled by the spirit of the instrument to be applied to cases as they arise. The constitution of Missouri, for instance, provides that "the powers of government shall be divided into three distinct departments, each of which shall be confided to a separate magistracy; and no person charged with the exercise of powers properly belonging to one of those departments shall exercise any power properly belonging to either of the others;" (*Const. Misso., Art.* 2,) and under this provision the Supreme Court of that State declared a special act of divorce by the legislature invalid; (*State* vs. *Fry et al.,* 4 *Misso. Rep.* 120;) but the court in terms recognized a difference between the constitution of that State and our constitution, which contains no express provision on the subject; and even between their constitution and that of New Hampshire, which has the following provision: "In the government of this State the three essential powers thereof, to

wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of each other as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity." (*Const. New Hampshire, sec.* 37.) The case referred to was decided on the ground that after the legislature had by general law, enacted what should be cause of divorce, an act of divorce in a particular case provided for by the general law, was rather a decree or sentence upon facts established than a law; and fell, therefore, appropriately within the powers charged upon the judiciary; which powers the legislature were expressly prohibited from exercising.

So also in the State of Maine, whose constitution is similar in this respect to that of Missouri; and whose legislature had passed a general law, declaring " that the supreme judicial court shall have exclusive jurisdiction in all cases of divorce," the judges of that court in reply to questions put to them by the Senate, gave the opinion that the legislature could not grant divorces in cases where the supreme judicial court have jurisdiction, though they were " not prepared to deny " the power in other cases. (16 *Maine Rep. Appx.* 479.)

The question then still remains for us, whether the insertion of a provision in the constitution expressly dividing the government powers into three branches, and requiring them to be kept separate, gives any force to this principle, over a constitution, which in fact divides those powers in the same way, and is based on the principle that they shall be distinct. Our constitution says, " the legislative power shall be vested in a general assembly." " The supreme executive powers shall be vested in a governor." " The judicial power shall be vested in a court of errors and appeals, a superior court, a court of chancery," &c.

But the difficult question remains what is judicial power? In many respects, the courts receive subjects of jurisdiction from the legislature, and the general range of causes cognizable before them, is, in many respects, subject to legislative restriction and expansion. " There are many questions," the Supreme Court of Maine, say, " in their nature, essentially judicial, which have not been assigned to, and incorporated into the judicial power." While, therefore, this power of granting divorces remained undefined, even though it be doubtful whether it fall appropriately under the head of legislative power, it could be exercised by the general assembly with more propriety than by either of the other branches of goverment; but how

is it after the legislature has declared that it was, to a certain extent, judicial power, and that the courts should have jurisdiction over it; and the judiciary has also, by accepting the jurisdiction and acting under it, equally adjudged it to be judicial power? The act of 1832 declares, " that the Superior Court shall have the sole cognizance of granting divorces, where either of the parties had a former wife, or husband, living at the time of solemnizing the second marriage; or where either of the parties shall be wilfully absent from the other, with the intention of abandonment, three years; or in case of adultery; or where the male party is actually impotent at the time of the marriage; or in case of extreme cruelty." Whilst the act of 1832 remains in force, doubts may well exist, whether the general assembly has power by special law to divorce parties for any of the causes specified in that act. As to all other cases it may have been wise to retain the power in the legislature; for there may exist cases of a character improper for public judicial investigation; and also, cases so special in their circumstances, as not to fall within any class defined by general law. But as to the causes of divorce mentioned in this act, there can be no doubt that public and private convenience, and economy, as well as general principles appertaining to the investigation of facts, and adjudication of cases between parties; would all be better served by a judicial, than by a legislative exercise of this power.

Judgment for defendant.

*Wales*, for plaintiff.
*Rogers*, for defendant.